WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shari D. Valenta,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-20-00126-PHX-MTM<br><br>**ORDER** |

  At issue is the denial of Plaintiff Shari Valenta's Application for Disability Insurance benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 17, "Def. Br."), and Plaintiff's Reply (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 16–35) as upheld by the Appeals Council (R. at 1–6).

**I. BACKGROUND**

  Plaintiff filed her Application for Disability Insurance benefits on February 2, 2016, alleging disability beginning July 31, 2014. (*Id*. at 19.) Plaintiff's claim was denied initially on June 16, 2016, and upon reconsideration on October 14, 2016. (*Id*.) On July 2, 2018, Plaintiff appeared before the ALJ for a hearing on her claim, and on November 5, 2018,

the ALJ denied Plaintiff's claim. (*Id.* at 16–35.) The Appeals Council denied Plaintiff's Request for Review of the ALJ's decision on November 18, 2019. (*Id.* at 1–6.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; and headaches with dizziness. (*Id.* at 22.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability-onset date through the date of the decision. (*Id.* at 28.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 23.). In calculating Plaintiff's residual functional capacity ("RFC") the ALJ found:

> [Plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c), except she has the following additional limitations: she can never climb ladders, ropes, or scaffold; she can only occasionally balance; she can have only occasional exposure to excessive loud noise and excessive vibration; she can have no exposure to dangerous machinery with moving mechanical parts and no exposure to unprotected heights; and she can perform no driving on the job.

(*Id.*) Accordingly, the ALJ found that Plaintiff "is capable of performing her past relevant work as a receptionist and escrow clerk." (*Id.* at 27.)

## II.   LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the

Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ first determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, in the fifth step the ALJ proceeds to the determines whether claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three issues. First, Plaintiff argues that the ALJ incorrectly rejected opinions from Plaintiff's treating physician, Dr. Patrick Knowles. (Pl. Br. at 1.) Next, Plaintiff argues that the ALJ erroneously discounted her symptom testimony. (*Id*.) Finally, Plaintiff argues that the ALJ erroneously calculated Plaintiff's RFC and "made it up" by relying on the ALJ's own interpretation of the medical evidence. (Reply at 13.)

The Court is not persuaded by Plaintiff's arguments. First, the Court finds that the

ALJ correctly discounted Plaintiff's symptom testimony based on its inconsistency with her activities of daily living ("ADLs") and her improvement with Botox injections. Next, the Court finds that substantial evidence supports the ALJ's rejection of Dr. Knowles' opinions because they are inconsistent with his treatment records, unexplained, and largely reliant on Plaintiff's self-reports. Finally, the Court finds that the ALJ correctly evaluated all the available evidence and computed Plaintiff's RFC.

**A.  The ALJ correctly rejected Plaintiff's symptom testimony because it was inconsistent with her improvement with treatment and her ADLs.**

At her hearing, Plaintiff testified that she stopped working because of migraine headaches. (R. at 42–43.) The ALJ discounted this testimony for three reasons. First, the ALJ found that "[o]bjective findings" indicate that Plaintiff "is likely to have some pain and limitations but not to the extent alleged." (*Id*. at 25.) Second, the ALJ found that "her headaches improved with Botox injections and medications. . . . [and o]ther measures, such as physical therapy, medications, ice, heat, and stretching, resulted in some improvement to her headaches." (*Id*. at 25.) Finally, the ALJ found that Plaintiff's ADLs, including traveling and frequenting casinos, "are inconsistent with her allegations of disability." (*Id*. at 25–26.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15. This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's

subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ properly discounted Plaintiff's symptom testimony based on its inconsistency with her improvement with treatment and her ADLs.[1] ALJs may properly discount symptom testimony based on its inconsistency with a claimant's improvement with treatment. 20 C.F.R. § 404.1429(c)(3)(iv); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). In rejecting Plaintiff's symptom testimony, the ALJ appropriately relied on medical evidence that shows Plaintiff's headaches greatly improved with Botox injections. (R. at 25, 605, 1086, 1088, 1090, 1094, 1222, 1226, 1230, 1235.) Though Plaintiff argues that her improvement does not necessarily translate to an ability to sustain full-time employment (Pl. Br. at 20–22), nonetheless, the ALJ correctly found that, in conjunction with her ADLs, Plaintiff's improvement undermined her allegations of disabling limitations. (*Id.* at 25.) Thus, even without a finding by the ALJ that Plaintiff's improvement specifically reflects an ability to sustain work, it was still appropriate to discount her testimony to the extent it was inconsistent with her significant improvement. This was not a case of the ALJ sifting the record for isolated instances of improvement; instead, the record repeatedly documents significant improvement with Botox injections. (*Id.* at 25, 605, 1086, 1088, 1090, 1094, 1222, 1226, 1230, 1235.)

Substantial evidence also supports the ALJ's finding that Plaintiff's testimony was inconsistent with her ADLs. This was also a permissible reason for the ALJ to discount Plaintiff's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ identified Plaintiff's travel to Disneyland, driving, and regular visits to the casino as inconsistent with her testimony. (*Id.* at 25.) Specifically, the ALJ found her visits to casinos inconsistent with "her allegations of severe headaches, dizziness, and sensitivity to light and sound," despite her use of earplugs and sunglasses to decrease sensitivity. (*Id.*)

---

[1] Substantial evidence also supports the ALJ's finding that Plaintiff's symptom testimony was inconsistent with the objective medical evidence. This rationale is insufficient on its own for the ALJ to reject Plaintiff's testimony, but it lends additional support to the ALJ's rejection of Plaintiff's testimony. *Burch*, 400 F.3d at 682.

Plaintiff argues that none of these activities indicate that Plaintiff can sustain work and highlights that the ALJ did not find that a substantial part of Plaintiff's day was made up of these activities. (Pl. Br. at 22–23.) Plaintiff's argument is unpersuasive. The ALJ acknowledged that Plaintiff's ADLs "are not dispositive of [her] disability status, [but] they illustrate the claimant's greater ability to function in contravention to her claims." (R. at 26.) The ALJ rejected Plaintiff's testimony based on her ADLs because they contradicted her testimony, even if they did not necessarily indicate an ability to sustain full-time work. Substantial evidence supports the ALJ's conclusion that Plaintiff's ADLs—driving, traveling to Disneyland and getting on rides, and frequenting the casino—undermine her allegations. (*Id*. at 25–26, 690, 841, 1226–27, 1230, 1233–34.) The ALJ's conclusion that these activities contradicted Plaintiff's allegations was a permissible one and it is supported by substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012.)

Accordingly, the ALJ did not err in rejecting Plaintiff's symptom testimony, as it was inconsistent with her ADLs and her improvement with treatment.

### B. The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Knowles.

Plaintiff's treating physician, Dr. Knowles, provided three opinions regarding Plaintiff's functional limitations. (R. at 809–10, 1127–28, 1237–38.) The ALJ gave these opinions little weight for four reasons. (*Id*. at 27.) First, the ALJ found that the opinions were "based in large part on the claimant's subjective complaints." (*Id*.) Second, the opinions were completed using checkbox forms and lack detailed explanation. (*Id*.) Third, the ALJ found the opinions were biased since "Dr. Knowles's assessed limitations are so extreme that they appear to be a sympathetic opinion." (*Id*.) Finally, the ALJ found the assessments were inconsistent with Dr. Knowles's own treatment records, which the ALJ found documented "the claimant's intermittent migraine problems, intact neurological findings, lack of weakness, and absence of debilitating migraine symptoms." (*Id*.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti*, 533 F.3d at 1041. Those who have

treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c)(1)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion "is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The Court finds that the ALJ provided sufficient justification for rejecting Dr. Knowles's opinions and that those justifications are supported by substantial evidence.[2] Plaintiff's argument that the ALJ erroneously rejected the opinions based on their form is unpersuasive. (Pl. Br. at 16–17.) The ALJ did not reject the opinions merely because of they were in check-boxes, which would have been impermissible; instead, the ALJ additionally rejected them because they were unexplained. (R. at 27.) An ALJ may properly consider the extent to which opinions are explained and may discount opinions that are inadequately explained. 20 C.F.R. § 404.1527(c)(3); *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). Here, substantial evidence supports the ALJ's finding that the opinions were inadequately explained since neither Dr. Knowles's opinions, nor his treatment records provide detailed explanation regarding Plaintiff's limitations.[3] (R. at 809–10, 1127–28, 1237–38.)

In addition, the ALJ properly discounted Dr. Knowles's opinions because they were

---

[2] Though the Court finds that the ALJ appropriately rejected Dr. Knowles's opinions, the Court also finds that the ALJ's finding that they were biased by sympathy was erroneous, as that finding was speculative. Identifiable bias is a permissible basis for ALJs to reject medical opinions, but the ALJ did not identify any evidence of bias here. Nevertheless, this error was harmless since the ALJ provided additional justifications for rejecting Dr. Knowles's opinions that are supported by the record. *See Molina*, 674 F.3d at 1115 (defining harmless error as error that is inconsequential to the ALJ's nondisability determination).

[3] Notably, Plaintiff does not identify any place in the record where Dr. Knowles explains Plaintiff's limitations.

largely based on Plaintiff's self-reports, which were properly rejected. Contrary to Plaintiff's assertions, the ALJ did not reject Plaintiff's self-reports because of suspected impropriety by Dr. Knowles or Plaintiff. (Pl. Br. 15–16.) The ALJ properly found that Dr. Knowles's opinions should be discounted because they were based on Plaintiff's testimony that, as discussed above, was itself not credible. This was a permissible basis for rejecting the opinions and was supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.")

Finally, though it is a closer question, substantial evidence supports the ALJ's conclusion that Dr. Knowles's opinions were inconsistent with his own treatment records. Dr. Knowles's records document that Plaintiff regularly reported symptoms stemming from her migraines. (R. at 847, 883, 906, 1134.) Nevertheless, on other occasions Plaintiff reported improvement with treatment or did not report issues with migraines at all. (*Id.* 854, 888, 892–93, 898, 1086, 1088, 1090, 1094.) Further, the ALJ noted that, despite Dr. Knowles opining that Plaintiff had a balance disorder, Dr. Knowles only once observed that Plaintiff had unstable balance. (*Id.* 1128, 1154.) Moreover, the ALJ noted that many records document that Plaintiff had intact gait upon examination. (*Id.* at 348, 397, 609, 612–13, 652, 720, 735.) Ultimately, the ALJ reasonably concluded that Dr. Knowles's opinions are inconsistent with the objective medical evidence and his records. *See Thomas*, 278 F.3d at 954.

Accordingly, the ALJ did not err by rejecting Dr. Knowles's opinions. The bases offered for rejecting the opinions—(1) inconsistency with treatment records; (2) lack of explanation; (3) and reliance on self-reports—are specific and legitimate and supported by substantial evidence.

**C.     Substantial evidence supports the ALJ's computation of Plaintiff's RFC.**

Plaintiff argues that "the ALJ articulated *no* basis for finding [Plaintiff] was capable of performing activities required of medium work other than the ALJ's own opinion that

the record supported the residual functional capacity determination." (Pl. Br. at 24) (emphasis in original). Instead, Plaintiff argues, "[t]he ALJ made it up." (Reply at 13.) Essentially, Plaintiff argues that the ALJ deferred to the ALJ's own conclusions about Plaintiff's limitations based on her own evaluation of the medical record. (*Id.* at 23–25.)

The Court disagrees. Reviewing the ALJ's opinion as a whole, it is clear that the ALJ did not compute Plaintiff's RFC based on the ALJ's own purported medical expertise. Instead, the ALJ evaluated the medical opinions of record, developed the RFC from those opinions, and supplemented Plaintiff's RFC with limitations consistent with Plaintiff's discounted testimony. For example, the ALJ found Plaintiff can only occasionally balance, can have only occasional exposure to excessive loud noise, and can perform no driving on the job. (R. at 23.) These were not limitations that the ALJ made up out of thin air; they are limitations that are evidenced by the record. Nevertheless, the ALJ was still responsible for sifting through the competing opinions and Plaintiff's testimony and distilling Plaintiff's RFC. The RFC need not match any particular medical source opinion since it is a legal determination the ALJ is responsible for synthesizing. 20 C.F.R. §§ 404.1527(d)(2), 404.1545, 404.1546(c). Ultimately, it is the ALJ's duty to evaluate the medical evidence, resolve conflicts and ambiguities in the record and determine a claimant's RFC. *See Tommasetti*, 533 F.3d at 1041. Nothing in the ALJ's opinion indicates that the ALJ did any more or less than this duty entails. Consequently, the ALJ did not err by evaluating the record as a whole, including all of the medical opinions and Plaintiff's testimony, and then calculating Plaintiff's RFC.

## IV.   CONCLUSION

The Court concludes that substantial evidence supports the ALJ's nondisability determination. The ALJ appropriately discounted Plaintiff's symptom testimony based on its inconsistency with her ADLs and her improvement with treatment. Further, the ALJ correctly found that Dr. Knowles's opinions were (1) contradicted by his treatment records, (2) overly reliant on self-reports, and (3) lacked explanation. Finally, consistent with her duty, the ALJ appropriately evaluated the entire record and computed Plaintiff's RFC

taking into account all of Plaintiff's limitations that are supported by substantial evidence.

**IT IS THEREFORE ORDERED** affirming the November 5, 2018 decision of the Administrative Law Judge (R. at 16–35), as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 27th day of January, 2021.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge